ANNA DRESDNER and Another, Individually and in Behalf and for the Benefit of All Other Stockholders of THE GOLDMAN SACHS TRADING CORPORATION, Now Known as PACIFIC EASTERN CORPORATION, Similarly Situated, Appellants, *v.* THE GOLDMAN SACHS TRADING CORPORATION, Now Known as PACIFIC EASTERN CORPORATION, and Others, Respondents, Impleaded with FRANK E. TAYLOR, Defendant.*

Second Department, February 2, 1934.

* Revg. 148 Misc. 541.

*Samuel J. Levinson* [*Frank Weinstein* with him on the brief], for the appellants.

*Abraham Shamos* [*Charles S. Guggenheimer* with him on the brief], for the respondent Goldman Sachs Trading Corporation.

*Walter H. Pollak* [*Robert M. Benjamin* and *Samuel J. Silverman* with him on the brief], for the respondents Catchings and others.

*Selig Edelman* [*Harry J. Pasternak* with him on the brief], for the respondent Ralph Jonas.

DAVIS, J. The motions by separate defendants to dismiss the complaint under subdivision 4 of rule 107 of the Rules of Civil Practice have been granted. The grounds of the dismissal were that there was another action pending — not literally " between the same parties for the same cause "— but on the theory that the cause of action was derivative and that basically it was the same as in a prior action although the nominal parties plaintiff were different.

The complaint alleges, in brief, that the plaintiffs are stockholders of the defendant corporation; that the individual defendants are directors who have been and are in control of the corporation; that they have been guilty of gross mismanagement, misconduct and wrongful acts as such directors whereby the assets of the corporation have been wasted and dissipated; that the defendants (or some of them) have profited personally by such transactions; and the purpose of the action is to recover from the alleged wrongdoers, for the benefit of the stockholders, the value of the property alleged to have been unlawfully converted and wasted. Specific acts are alleged as constituting such misconduct.

This action was commenced April 29, 1933. Prior thereto two similar actions had been commenced by other stockholders in this State for the same general purpose; one by Wilkay Corporation and others on December 22, 1931; another by Cantor and others against some of the same defendants on February 11, 1932. Answers were interposed in both actions; and eventually, *on motion of the defendants*, they were consolidated March 7, 1933. Somewhat similar actions have been commenced in a Federal court and a Delaware court. With these latter two we are not concerned on the question of another action pending, for the rule relates only to those brought in the courts of this State. We mention them only as indicating that the charges made have apparent substance.

The defendants have based their motions on an absolute legal right to have the complaint dismissed and that right was sustained at Special Term (148 Misc. 541). We reach a different conclusion. Counsel differ little on the legal principles that the cause of action

is that of the corporation and whatever recovery is had will belong to it; that the derivative right of a stockholder to maintain the action arises when the corporation cannot or will not commence an action to recover assets belonging to its stockholders from those who have confiscated or wasted them; and, therefore, a stockholder is permitted to sue and set in motion the judicial machinery to the end that the value of the property may be recovered. (*Continental Securities Co.* v. *Belmont*, 206 N. Y. 7, 13; Civ. Prac. Act, § 195.) The parties also agree on the principle that when a judgment is obtained by one stockholder it binds all other stockholders, on the principle of *res judicata*.

The action may be called a " class action." The jurisdiction is of ancient origin in equity — independent of remedies given by statute under somewhat similar circumstances by sections 60 and 61 of the General Corporation Law. (*Isaac* v. *Marcus*, 258 N. Y. 257, 263; *Cross* v. *Bishop Oil Corporation No. 1*, 218 App. Div. 632, 634; *Hawes* v. *Oakland*, 104 U. S. 450, 460; 3 Pom. Eq. Juris. [4th ed.] § 1095.)

Courts of equity have always exercised broad powers. The fact that several parties brought separate actions for the same general relief did not present a distressing situation. The right to consolidate suits in equity existed long before the present section 96 of the Civil Practice Act developed in the minds of the reformers of civil practice. Actions might be stayed pending the determination of other actions, and in some instances vexatious suits resulting in multiplicity might be dismissed summarily. (*Stewart* v. *Butler*, 27 Misc. 708, 709; *Wells* v. *Bushe*, 118 N. Y. Supp. 486; *Keeler* v. *King*, 1 Barb. 390; *Patterson* v. *Northern Trust Co.*, 286 Ill. 564.)

The defendants do not claim that there is any controlling authority on the precise question presented here — that a suit like this must be dismissed as of right for the reason that another similar action has been earlier brought by a different stockholder. Nor do plaintiffs cite controlling authority to the contrary. Both sides rest their claims on certain expressions in opinions of the courts which are admitted to be dicta, and on text authorities based exclusively on such dicta. (See 13 Fletcher Cyc. of Corp. [Permanent ed.] § 5860; 4 Cook Corp. [8th ed.] § 748.) In *Seagrist* v. *Reid* (171 App. Div. 755) there are statements in both the prevailing and dissenting opinions to the effect that the action first brought is a bar to the second (pp. 760, 769). It is said in the opinion in *Goodbody* v. *Delaney* (80 N. J. Eq. 417) that " it is quite possible that if such similar suit were brought in the same court with the prior suit a plea of former action pending would

be sustained " (p. 419). This is all that industry of counsel or our own research can produce on the proposition that a complaint in the second action should be dismissed.

The dictum relied on by appellants' counsel is found in the opinion in *Brinckerhoff* v. *Bostwick* (99 N. Y. 185), where it is said (p. 194): " The bringing of the action by the original plaintiff did not prevent the other stockholders from bringing similar actions. But the moment a judgment should be recovered in one action for the benefit of all the stockholders, the proceedings in all the others would be stayed." This statement of the rule was later quoted with apparent approval in *Hirshfeld* v. *Fitzgerald* (157 N. Y. 166, 181) — a representative, not a derivative, action.

There are many actions, representative in character, where the principle is applied that a suit by one will not bar a later suit by another similarly situated. It is argued by respondents that the rule is different in derivative actions and it was so held by the learned court at Special Term. We doubt that very much distinction can be made in principle; but to limit discussion we will assume that such distinction exists. Likewise the plaintiffs claim that in this complaint new facts are alleged; but for the purposes of this appeal we will assume, as was held at Special Term, that the differences between the complaints are only in immaterial details.

The absence of direct authority on the question here presented may indicate that for a long period of years the right of any stockholder to invoke the aid of the courts in his individual action has gone unchallenged. However, stockholders in large corporations are, as a matter of common knowledge, generally uninformed and in a measure indifferent concerning the management of the corporation. Generally, without inquiry, they sign proxies as a matter of course so that directors and officers may be re-elected and their policies may be continued. When dividends cease and the stock becomes comparatively worthless, they may complain and grumble, but rarely will they resort to the courts for a remedy. The reason for such inertia is readily found. Stockholders are widely scattered and have no definite method of contact with each other. They usually know that the evidence is almost exclusively in the control of those who are charged with delinquency; that those same individuals are likewise in control of the funds of the corporation and may apply them in defense of their acts, whether those acts are innocent or wrongful; that in seeking a remedy the stockholder will be met with every obstacle and procedural delay that the ingenuity of skilled counsel can devise, as is illustrated in the present case; and that the litigation must

entail on their part a great expense with the eventual result in doubt. So unless a group is organized by ambitious counsel, or one or more stockholders have great courage and ample means to maintain a long-continued litigation, the stockholders remain quiescent, accepting their misfortunes as a decree of relentless fate. It is only in times of general cataclysm or great stress, like those of the present, that indignation will flare up into some decisive action. Common experience tells us that when officers and directors of a wrecked corporation are called to account, they are not eager to go to an early trial on the merits — whatever the merits may be. There is great reluctance to furnish the evidence of their acts of management and make disclosure of books and records. The way of the inquiring stockholder is beset with difficulties and discouragements created chiefly by those whose acts are attacked. Such, in brief, is the background of the average stockholder's action as we view it.

We hesitate, therefore, to take a narrow view of the principle of another action pending whereby as an absolute right the defendants are entitled to dismissal — relegating plaintiffs, as defendants suggest, to the doubtful remedy of intervention in the existing consolidated action. Permitting a party to intervene is always a matter of judicial discretion depending on a variety of circumstances. It is easy for defendants now to suggest such a policy to plaintiffs. But the latter may be reasonably certain that when they may attempt to intervene they will be met with the same strong opposition they are now encountering; and if eventually they are successful there will be the question frequently raised as to their right of any sort of control over the action brought by others, with the argument that they must remain passive on the theory that their rights will be preserved when, if ever, a judgment may be obtained. If intervention will furnish plaintiffs a proper remedy, why is such circuity necessary, when in the exercise of its equity powers the court may grant consolidation? That procedure seemed satisfactory to defendants when on their own motion the two prior actions were consolidated. The discovery of the right to dismiss seems somewhat belated.

The procedural remedy given in subdivision 4 of rule 107 is not new. It was taken literally from subdivision 4 of section 488 of the Code of Civil Procedure, and was, theretofore, contained in section 144 of the Code of Procedure. It was intended to apply principally to actions at law where the parties and the cause were actually or substantially the same, and not to restrict the broad powers of a court of equity in suits of this nature — as the dictum in the *Brinckerhoff* case indicates. As we have already stated,

the independent right of any stockholder to sue has not been directly challenged during the period of our judicial history by a motion of this nature. The wrong is common to all stockholders. The right to sue is, we think, alike common to them.

We adopt the dictum of the *Brinckerhoff Case* (*supra*) as stating the proper doctrine to be applied; and hold that defendants have no absolute right to a dismissal. We speak of an absolute right in contradistinction to a right based on judicial discretion. The rights of defendants, if there be consolidation instead of dismissal, will not be impaired or be subject to any substantial prejudice, except as to a possible delay in the trial. They have not urged that they are eager for an early trial — in fact everything indicates that they have no anxiety or zeal in favor of it.

The evident purpose of the plaintiffs, whether they proceed by an independent action or as parties to the one consolidated, is that they may have some control over the litigation and thus be present on any trial to protect and secure their rights and prevent a discontinuance of the action by the original plaintiffs. (*Brinckerhoff* v. *Bostwick, supra*, 195.) This is a highly legitimate purpose. There is nothing to prevent the defendants, before judgment, from buying their peace with the plaintiffs in the consolidated action by means of a private settlement (*Brinckerhoff* v. *Bostwick, supra*, 194; *Handford* v. *Storie*, 2 Sim. & Stu. 196, 198), leaving other stockholders to seek their remedy by a new action — if the Statute of Limitations has not run against them.

Speaking generally and not in relation to this particular case, the first action brought by a stockholder furnishes no adequate security that other stockholders will be assured of a complete remedy. The one first in the field of action may not be possessed of all the facts. He may omit from his complaint material allegations of facts which have been discovered by another more vigilant and industrious. His efforts may be thwarted by lack of funds, courage or determination, or lack of skill and initiative on the part of his counsel. There is always, as we have said, the strong possibility of a private settlement. There is no requirement that the stockholder who sues or the defendants shall give notice of the suit to other stockholders. It is left to chance for the latter to discover it. If in good faith other stockholders are unaware of the prior action and after much expense bring an action of their own, it is a harsh and drastic doctrine which compels dismissal solely on a rule of chronology, regardless of merit. There is little fundamental virtue in such a rule.

Beyond all that, the door is opened to collusive actions. It would be very easy for offending officers and directors to obtain

a friendly stockholder to begin an action and to suppress all information on the subject. The defendants and not stockholders would then be in control of the litigation. If the doctrine here advocated by the defendants prevails, all other stockholders are prevented from bringing actions in good faith — unless to their already great difficulties, to which we have referred, they must have added the duty of establishing by proof that the first action is in fact collusive. If other stockholders without intervention rely on the first action to furnish a remedy to all, then it may be permitted to drag along until the Statute of Limitations has run and be discontinued on a private settlement or otherwise; and other stockholders will be left remediless. There should be some measure of certainty that the original action will be prosecuted to judgment, or at least that all diligent stockholders will share in a settlement, before a second action is stayed or dismissed in the exercise of judicial discretion.

Stockholders' actions (not collusive) may be brought for three distinct purposes: *one*, for the genuine purpose of benefit to all stockholders with a determination to pursue the suit to judgment, with all stockholders invited in good faith to join in labor and expense; *two*, for the purpose of individual benefit by private settlement, with the fact of the bringing of the suit kept secret; *three*, a suit brought purely for " strike " purposes. We are concerned chiefly with the one denominated " two."

Still speaking generally, parties and counsel may not apply the same degree of skill, diligence and good faith to the prosecution of an action. If it be left to the one who by the sheer rule of chronology is the only one entitled to prosecute, then the other stockholders who have had the temerity to sue may be left comparatively without remedy. The judgment when obtained is a bar to other actions, no matter what the result may be. Further than that, it is a bar not only as to the questions decided but as to those which might have been presented and tried but were not. (*Cromwell* v. *County of Sac*, 94 U. S. 351, 352; *Hull* v. *Hull*, 225 N. Y. 342, 353, 354.) That rule is necessary in order to have a finality to litigation. No one doubts that it often results in injustice to individuals. We think that, before judgment, courts should not be eager to prevent presentation of all issues by parties sufficiently interested to begin suit, but should pursue a liberal policy in permitting them freely to participate in the trial, where the judgment will eventually become binding upon them. They should not be barred or their way made difficult by a narrow interpretation of the rule of another action pending.

The defendants argue that the plaintiffs here have not shown that there was any collusion, lack of skill or good faith, or a pro-

posed private settlement. We have practically no information about it one way or the other. It is not necessary, for, as we have said, the defendants have moved for dismissal as an absolute right. We are attempting to formulate a rule that may apply to any case in the future and are discussing a general principle in the light of possibilities. We believe there is not much virtue in the claim that the one who first brings suit is by that fact alone in such an advantageous position that all others must give way, regardless of the purposes of the one first on the field, his relations with the defendants, and the skill he brings to the conduct of the suit, ostensibly for the benefit of all others entitled to relief. If the first action is free from collusion and is being prosecuted with skill and in good faith, grounds for a stay of prosecution of the second action may be shown, but not, as we believe, for dismissal.

There is little danger to be apprehended here from a multiplicity of actions by all or many stockholders ranging from 25,000 to 40,000 in number. It is likely that most of them will remain inert. When such trouble actually impends, the defendants will not be unduly harassed, for the remedy by stay or consolidation is simple; and those suits purely vexatious may be summarily dismissed — on grounds, however, more substantial than mere chronology. What is sought by all stockholders acting in good faith is a prompt and efficient determination of their rights. The defendants ought not to be concerned in the question of which particular group of stockholders are engaged in the prosecution if they have meritorious defenses — particularly if all are compelled to unite, and when the judgment obtained will be conclusive on all. An excessive zeal on the part of the defendants to hinder and impede a stockholder in good faith seeking a remedy may promote a suspicion that they have a distaste for a too vigorous prosecution.

We have not in this case reached a stopping point where actions may be discouraged because of multiplicity. We think that they should not run independently, but the parties in all should unite by consolidation. There has been no motion by either side for such a remedy, so we may not order consolidation, but we may make that result simple.

There are recent conflicting decisions at Special Term on the question here presented, and, therefore, we have been impelled to give our views more at length than ordinarily would be required.

The orders dismissing the complaint and the judgment entered thereon should be reversed on the law and the facts, with costs, and motions denied, with ten dollars costs on each motion, on condition that plaintiffs offer to stipulate, within ten days after the entry of the order herein, that without formal motion an order

may be entered consolidating this action with the prior consolidated actions by stockholders. If such stipulation is given, the defendants have leave to answer within ten days thereafter, or at their option to give notice to plaintiffs that they elect to let their answers in the consolidated action stand as their answers to this complaint, with leave to plaintiffs to move at Special Term for further amplification of the answers as they may be advised; otherwise, the orders and judgment should be affirmed, with costs, in the exercise of discretion and not as a strict legal right.

YOUNG, KAPPER, HAGARTY and CARSWELL, JJ., concur.

Orders dismissing complaint and judgment entered thereon reversed on the law and the facts, with costs, and motions denied, with ten dollars costs on each motion, on condition that plaintiffs offer to stipulate, within ten days after the entry of the order herein, that without formal motion an order may be entered consolidating this action with the prior consolidated actions by stockholders. If such stipulation is given, the defendants have leave to answer within ten days thereafter, or at their option to give notice to plaintiffs that they elect to let their answers in the consolidated action stand as their answers to this complaint, with leave to plaintiffs to move at Special Term for further amplification of the answers as they may be advised; otherwise, the orders and judgment are unanimously affirmed, with costs, in the exercise of discretion and not as a strict legal right.