**FORMER STOCKHOLDERS OF BARR RUBBER PRODUCTS COMPANY, represented by Richard R. Kruse, Plaintiffs,**

v.

**The McNEIL CORPORATION and the Sun Corporation, Defendants.**

**FORMER STOCKHOLDERS OF BARR RUBBER PRODUCTS COMPANY, represented by Richard R. Kruse, Plaintiffs,**

v.

**The B. F. GOODRICH COMPANY, the McNeil Corporation and the Sun Corporation, Defendants.**

**Civ. Nos. C69–742, C69–743.**

United States District Court, N. D. Ohio, E. D.

March 20, 1970.

Albert L. Ely, Jr., Ely, Golrick & Flynn, Cleveland, Ohio, Flynn, Py & Kruse, Sandusky, Ohio, for plaintiffs.

James C. Davis, Squire, Sanders & Dempsey, Cleveland, Ohio, for B. F. Goodrich Co.

Richard E. Guster, Wise, Roetzel, Maxon, Kelly & Andress, Akron, Ohio, for McNeil Corp.

E. R. Hamilton, Akron, Ohio, Pennie, Edmonds, Morton, Taylor & Adams, New York City, for Sun Corp.

**MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS**

KALBFLEISCH, District Judge.

Before the Court for consideration are motions to dismiss filed by all defendants in two related cases arising out of the same series of transactions and oc-

currences. Both cases seek treble damages under 15 U.S.C. § 15 for alleged antitrust violations by the defendants. There is but one legal question raised in all the motions: Do the plaintiffs have standing to sue upon the claims asserted in the complaints?

The allegations of both complaints involve the same occurrences except that the complaint in case No. C69–743 goes beyond that of case No. C69–742 in describing the involvement of defendant B. F. Goodrich Company in the alleged wrongful activity. Thus, no distinction will be made in the discussion here between the two cases unless relevant to the issues involved.

Plaintiff Richard R. Kruse proposes to represent a class consisting of himself and all other former stockholders of the Barr Rubber Products Company (hereinafter "Barr") who owned Barr stock as of September 30, 1965. Plaintiffs aver in detail an intricate course of conduct on the part of the defendants involving allegedly improper patent acquisition, maintenance and manipulation, unfair competition, and fraud. As a result of the alleged misconduct, plaintiffs claim that the market value of Barr stock dropped and that they sold their stock at the depressed value. The damages claimed consist of the loss to each plaintiff from the sale of his or her Barr stock at a price substantially less than that at which it could have been sold but for the wrongful conduct of the defendants.

Defendants assert that the complaint in each case alleges misconduct directed against Barr and its business and, in such a case, the stockholders of Barr have no standing to assert such misconduct as a basis for recouping the loss occasioned by a drop in the market value of their stock. Plaintiffs counter by arguing that the rule of law relied upon by the defendants is not strictly enforced in recent decisions; further, plaintiffs assert that the allegations in the complaint fall outside the scope of the rule which denies stockholders redress for wrongs against the business and property of the corporation.

A careful review of the decisions on the issue as well as a scrutiny of the complaint in each case reveal that the motions to dismiss are well taken.

There is no question that the courts have consistently held that a stockholder has no right of action for loss in value of his stock due to antitrust violations against the business and property of the corporation. Loeb v. Eastman Kodak Co., 183 F. 704 (3rd Cir. 1910); Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1 (9th Cir. 1963); Data Digests, Inc. v. Standard & Poor's Corporation, 43 F.R.D. 386 (S.D.N.Y.1967), and cases cited therein. The plaintiffs' claim that the rule has been eroded in recent years is without merit. They have not cited, nor can the Court discover any case wherein a stockholder was permitted to sue for stock depreciation resulting from antitrust violations directed only against the corporation. The general language of the United States Supreme Court in Radiant Burners Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 15 L.Ed.2d 358 (1961), though capable of an interpretation which might indict the specific rule formulated and applied by the lower courts, is of little weight since the questions of "directness" of injury to the plaintiff and his standing to sue were not at issue in the case.

Further, the cases cited by the plaintiffs do not show a deviation from the rule, but merely a determination by the court that the antitrust violations in a particular case had been directed against the stockholder himself, as opposed to the corporation's business or property, or had resulted in damages other than the coincidental depression of stock value. The case of Peter v. Western Newspaper Union, 200 F.2d 867 (5th Cir. 1953), relied upon by the plaintiffs, held that the plaintiff-stockholders had no standing to sue for the loss at which they were forced to sell their stock. By

way of dicta, the court in the *Peter* case referred to Coronado Development Corporation v. Millikin, 175 Misc. 1, 22 N.Y.S.2d 670 (1940), by which plaintiffs claim support for the proposition that a stockholder may sue for loss in sale of his stock. The *Coronado* case does not contradict the general rule, but holds only that the damage to the stockholders in that case was brought about by activities aimed directly at them and was not merely a consequential result of misconduct directed at the corporation.

Similarly, in Data Digests, Inc. v. Standard & Poor's Corporation, supra, the plaintiff was not seeking compensation for the loss in his stock value, but rather for the lower salary, increased hours, and deprivation of usual vacation time in connection with his work at the corporation, all of which were claimed to have resulted from the misconduct directed at the corporation.

■ Thus, the rule invoked by the defendants is still recognized and applied by the courts; and until there is more than speculation that the rule is contrary to the policies outlined by the United States Supreme Court in analogous areas, the specific decisions on the issue presented here provide the proper guideline for its resolution.

The issue of whether the allegations of the complaint are within the scope of the rule just discussed must likewise be resolved against the plaintiffs. A most generous reading of the complaint in each case requires the conclusion that the only damage sought in either action is that resulting from loss incurred by each plaintiff from the sale of his or her shares on September 30, 1965. It is by ownership of stock upon that date that a person qualifies as a member of the proposed class and the complaints are specific as to the nature of the damages claimed.

■ Plaintiffs rely heavily upon the fact that one of the former stockholders, Randolph J. Dorn, was named as a defendant in two lawsuits, both of which are alleged to have been part of the wrongful activities of the defendants. The argument is that the misconduct was thereby directed against a stockholder and not only against Barr as a corporation. Again, the complaint does not aver, nor is there any allegation from which it can be inferred that the two actions against Dorn directly occasioned the damages sought to be recovered here. On this subject, the complaint alleges wrongful maintenance of a patent through wrongful institution of lawsuits against an officer of Barr, and nothing more. The fact that the officer was also a stockholder is coincidental at best and is too fine a thread to support a claim upon behalf of Dorn, let alone all the stockholders, that the misconduct was directed at them in their capacity as stockholders.

Further, the complaints do not seek recovery for losses which Dorn may have suffered by being forced to expend the time, effort and expense in defending the lawsuits; under the *Data Digests* case, supra, it could be concluded that these items of damage would be directly occasioned by the misconduct alleged in the complaints here and would provide Dorn with a basis for recovery. But the eventual drop in market value of all the corporate stock remains a remote and incidental effect of the claimed antitrust violations, including the two actions instituted against Dorn.

By way of summary, the rule that stockholders may not sue for loss in stock value due to antitrust violations against the business and property of the corporation is well established in the law. Treating all well-pleaded facts and the reasonable inferences therefrom as established for the purposes of the matters here considered, there is no recovery sought in either of the cases before the Court for anything but the loss to each stockholder from sale of his or her corporate stock. Further, the misconduct alleged to have occasioned the loss was directed solely at the business and property of the Barr Rubber Products Corporation and, perhaps inevitably, but only incidentally, did the misconduct re-

sult in a depression of stock value. There can be no inference drawn that the design of the defendants was to induce the sale of the stock, thereby directing the wrongful activities at the stockholders themselves. As was stated in Peter v. Western Newspaper Union, supra:

"In the present case under the averments of the complaint, prior to the sale of the stock, its depreciation in value had already been suffered from injuries directly affecting the corporation rather than the stockholder. The sale of the shares of stock resulted in no further loss to the stockholder but substituted for the already depreciated value of the stock money supposedly of equal value." (200 F.2d p. 872.)

In that the plaintiffs have no standing to assert the claims involved, both complaints fail to state a claim upon which relief can be granted. Accordingly, the motions of the defendants are sustained.

It is ordered, therefore, that the complaints in cases Nos. C69–742 and C69–743 are dismissed.